IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| STRAWBERRY WATER USERS ASSOCIATION, | ) ) ) | Civil Nos. 2:01-CV-0295BSJ<br>2:02-CV-344BSJ |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

```
                        FILED
              CLERK, U.S. DISTRICT COURT
                 March 3, 2006 (4:55pm)
                   DISTRICT OF UTAH
```

\* \* \* \* \* \* \* \* \*

This is a case about water.  It is not just a case about water, but about contracts that relate to water, federal water projects, federal and state statutes relating to water, and the relationship of federal and state governments to federally-sponsored water projects.

Many of the answers are found in historical events and documents which stretch back more than a century.

Many of the statutes and documents appear to speak with inconsistent voices, which we will try to reconcile as best we can.

This effort has taken some time.  Because of the importance of the issues presented, we have felt constrained to review with some care the materials, arguments, and issues proffered to the court for decision, which have been prepared by counsel over a period of years.  The court has also taken into consideration the recent opinion of the

Utah Supreme Court in *In re: Uintah Basin Water Rights (Strawberry Water Users Association v. Bureau of Reclamation)*, 2005 UT 64, ___ P.3d ___, 2005 WL 2351933 (decided Sept. 27, 2005), which addresses many of these same materials, arguments and issues.

### Factual Background

In the *Uintah Basin Water Rights* opinion, the Utah Supreme Court succinctly summarized the history of the Strawberry Valley Project, which serves as the historical context for the claims asserted in this proceeding as well.  *See id.* 2005 UT 64, at ¶¶ 9-20.

In this case, the following facts, among others, appear without substantial controversy:

On December 15, 1905, the Secretary of the Interior, acting under authority of the Reclamation Act of 1902,[1] authorized construction of the Strawberry Valley Project ("SVP").  Preliminary work on the SVP actually began in 1903, but the bulk of the SVP was constructed by the United States Bureau of Reclamation between 1906 and 1922. The SVP was intended to, among other things, develop, divert and store waters from the tributaries of the Duchesne River in the upper regions of the Uintah Basin in Wasatch County, and to convey that water through the Wasatch Mountains for use on lands in southern Utah County.  In addition, the SVP would develop and divert water from the Spanish Fork River in Utah County for use in southern Utah County as well.

---

[1]Act of June 17, 1902, ch. 1093, 32 Stat. 388, *codified at* 43 U.S.C.A. §§ 372 *et seq.* (1986).

As initially constructed, the SVP consisted of a number of features, including the following:

 a. the Strawberry Dam, constructed across the natural channel of the Strawberry River in Wasatch County, creating the Strawberry Reservoir with a total active storage capacity of approximately 270,000 acre-feet;

 b. a series of diversion dams and feeder canals to collect and to divert water from natural streams in the Duchesne River Drainage in the Uinta Mountains in Wasatch County for storage in the Strawberry Reservoir;

 c. the Strawberry Tunnel, approximately 3.8 miles long, with an original capacity of approximately 600 cubic feet per second ("cfs"), driven through the Wasatch Mountains from Strawberry Reservoir on the east side into Sixth Water Creek on the west side, to convey the storage waters from the Strawberry Reservoir into the Spanish Fork River Drainage to be applied to beneficial use in southern Utah County;

 d. the Upper Spanish Fork Power Plant;

 e. the Strawberry Power Canal;

 f. the Strawberry High Line Canal;

 g. the Mapleton-Springville Lateral; and

 h. the Spanish Fork River Diversion Dam, designed and constructed to divert and re-divert SVP waters from the Spanish Fork River into the Strawberry

-3-

Power Canal for delivery into the Upper Spanish Fork Power Plant for electrical

generation, and into the Strawberry High Line Canal and Mapleton-Springville

Lateral to be applied to beneficial use on lands in southern Utah County.

Deliveries of Strawberry project water began in 1915.

Upon completion, the SVP provided an average annual water supply of 71,000

acre-feet for the irrigation and related uses on approximately 43,000 acres of land in

southern Utah County.

Consistent with the intended purposes of the Reclamation Act and construction of

the SVP, and pursuant to the Patents and Water-Right Certificates Act of 1912,[2] and/or

the Town Sites and Power Development Act of 1906,[3] and/or the Warren Act,[4]  the

United States entered into various water right contracts to provide SVP water users with

rights to beneficially use SVP water.

Section 4 of the Fact Finders' Act, Act of December 5, 1924, ch. 4, 43 Stat. 702,

*codified at* 43 U.S.C.A. § 500 (1986), required that the operation and maintenance of

reclamation projects be turned over to a water users' association or irrigation district, and

thereafter, that the United States, in its relation to the project, would be required to deal

with the water users' association or irrigation district.  Section 4, sub-section I of the Fact

---

[2]Act of August 9, 1912, ch. 278, 37 Stat. 265 (1912), *codified at* 43 U.S.C.A. §§ 541-546 (1986).

[3]Act of April 16, 1906, ch. 1631, § 4, 34 Stat. 116, *codified at* 43 U.S.C.A. § 567 (1986).

[4]Act of February 21, 1911, ch. 141, 36 Stat. 925, *codified at* 43 U.S.C.A. §§ 523-525 (1986).

Finders' Act reads:

> Whenever the water users take over the care, operation and maintenance of a project, or a division of a project, the total accumulated net profits, as determined by the Secretary, derived from the operation of project power plants, leasing of project grazing and farm lands, and the sale or use of town sites shall be credited to the construction charge of the project, or a division thereof, and thereafter the net profits from such sources may be used by the water users to be credited annually, first, on account of project construction charge, second, on account of project operating and maintenance charge, and third, as the water users may direct.  No distribution to individual water users shall be made out of any such profits before all obligations to the Government shall have been fully paid.

43 U.S.C.A. § 501 (1986).

The Strawberry Water Users Association ("SWUA") was organized in 1922 for, among other things, the purposes of:

a.      representing the SVP Water Users in their dealings with the United States regarding the SVP;

b.      assuming the obligations of the SVP Water Users to repay to the United States the remaining unpaid and reimbursable construction costs and operation & maintenance costs of the SVP;

c.      assuming the obligations of the United States to deliver and distribute SVP water to SVP Water Users; and

d.      assuming the responsibility for the operation & maintenance of the SVP, except for the Strawberry High Line Canal and the Mapleton-Springville Lateral.

SWUA entered into contracts with the United States dated September 28, 1926 ("1926 Contract"), November 20, 1928 ("1928 Contract"), October 9, 1940 ("1940 Contract"), as well as the 1991 Contract at issue in this case.

Under the 1926 Contract, (1) the care and the responsibility for operation and maintenance of the entire SVP, except the Mapleton-Springville Lateral and the Strawberry High Line Canal, was transferred to SWUA; (2) SWUA agreed to perform all obligations of the United States under the contracts executed by the United States as part of the project, including the delivery of SVP water to SVP Water Users; and (3) SWUA guaranteed repayment of the reimbursable construction costs for the SVP still owed to the United States.

The establishment of enforceable legal rights to use Strawberry project water required more than the physical delivery of that water to users. In the Reclamation Act of 1902, Congress had

> created a blueprint for the orderly development of the West, and water was the instrument by which that plan was to be carried out. *See Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 292 (1958). Congress's plan included purposeful and continued deference to state water law, which was to govern the ownership of all water rights absent a clear Congressional directive to the contrary. . . . Section 8 of the Reclamation Act left little room for doubt.

*Uintah Basin Water Rights*, 2005 UT 64, at ¶ 11 (citations omitted). Section 8 of the Reclamation Act of 1902 reads in pertinent part:

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory

relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the water thereof:  *Provided, That the right to use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right.*

Act of June 17, 1902, ch. 1093, § 8, 32 Stat. 388, 390 (1902), *codified at* 43 U.S.C.A. §§

372, 383 (1986) (emphasis added).

On January 27, 1904, in anticipation of the construction of the Strawberry project,

Frank C. Kelsey filed with the State Engineer Application No. 79 for the appropriation of

100,000 acre-feet of water from the Strawberry River, Trail Hollow Creek, Indian Creek,

and Horse Creek, all of which are located in the Duchesne River drainage. Kelsey's

application, anticipated that the water would be stored in the proposed Strawberry

Reservoir from which it would be diverted for application to beneficial use on lands in

southern Utah County.  The application was assigned to the Strawberry Irrigation and

Reservoir Committee, on May 16, 1905, and was then reassigned to the Bureau of

Reclamation on August 11, 1905.  The Utah State Engineer approved Application No. 79

on January 23, 1906, subject to proof of actual appropriation and beneficial use.

By the early 1930s, the SVP appropriation efforts were complete, and proofs of

appropriation were filed with the State Engineer. On March 13, 1933, the Engineer issued

Certificate of Appropriation No. 2115 (later designated as water right 43-3001)

for the 100,000 acre-feet covered by Application No. 79, which had originally been filed in 1904. The certificate was based exclusively upon the beneficial use of Project water by the individual Strawberry users whose contractual interests had been assigned to the SWUA in exchange for shares of SWUA stock. The certificate provided for capture and storage in Strawberry Reservoir, delivery down Diamond Fork into the Spanish Fork River and then into the Strawberry High Line Canal for the purpose of irrigation of 53,522.24 acres of land, specifically describing such land, all of which is located in southern Utah County. The certificate was issued in the name of the United States and remains in the name of the United States.

In addition, the Utah State Engineer has issued the following certificates of appropriation of Strawberry project water in the name of the United States:

a.     Certificate of Appropriation No. 2116 (later designated as Water Right No. 43-3102), based upon Application No. 3563, for 60,000 acre-feet of water to be applied to beneficial use on the same 53,522.24 acres referred to in Certificate of Appropriation No. 2115, described above.

b.     Certificate of Appropriation No. 5893 (later designated as Water Right No. 43-1259), based upon Application No. 11573.

c.     Certificate of Appropriation No. 2117 (later designated as Water Right No. 51-1004), based upon Application No. 2259.

d.     Certificate of Appropriation No. 2118 (later designated as Water

Right No. 51-1016), based upon Application No. 5910.

      e.      Certificate of Appropriation No. 627 (later designated as Water

Right No. 51-1002), based upon Application No. 1143.

These certificates were issued upon applications filed by the United States Bureau

of Reclamation between 1910 and 1934 and proof of application to beneficial use by

Strawberry project water users.

In addition, SWUA has acquired in its own name water rights for beneficial use by

SWUA and its shareholders in southern Utah County, the ownership and use of which is

not in dispute in this litigation, including the following:

      a.      Certificate of Appropriation No. 2448 (later designated as Water

Right No. 51-1030) with a priority date of March 21, 1931, based on Application

No. A11049 for the diversion and nonconsumptive use of 85.23 cfs of water from

the Spanish Fork River for electrical generation by SWUA at the Upper and Lower

Spanish Fork Power Plants.

      b.      Certificate of Appropriation No. 2238 (later designated as Water

Right No. 51-1026) with a priority date of June 27, 1929, based on Application

No. A10695 for the diversion and nonconsumptive use of 35 acre feet of water

from the Cold Springs Area for electrical generation by SWUA at the Lower

Spanish Fork Power Plant.

      c.      Certificate of Appropriation No. 5885 (later designated as Water

Right No. 51-1063) with a priority date of January 17, 1941, based on Application

No. A14028 for the diversion and nonconsumptive use of 11 cfs of water from

Peteetneet Creek for electrical generation by SWUA at the Payson Power Plant.

      d.     Approved Application to Appropriate No. A61324 (Water Right No.

51-5799) with a priority date of October 14, 1985 for the diversion and

nonconsumptive use of 237 cfs of water from the Spanish Fork River for electrical

generation by SWUA at the Upper Spanish Fork Power Plant.

      e.     Approved Application to Appropriate No. A61325 (Water Right No.

51-5800) with a priority date of October 14, 1985 for the diversion and

nonconsumptive use of 315 cfs of water from the Spanish Fork River for electrical

generation by SWUA at the Lower Spanish Fork Power Plant.

      f.     Underground Water Claim No. 11730 (later designated as Water

Right No. 51-2259).

      g.     Underground Water Claim No. U23159 (later designated as Water

Right No. 43-9622).

      h.     Underground Water Claim No. U11729 (later designated as Water

Right No. 51-2258).

SWUA has also filed water right applications with the Utah State Engineer that

have not yet been approved.  Those water right applications include the following:

      a.     Application No. A64774 (later designated as Water Right No. 51-

6188) with a priority date of June 12, 1990 for the diversion and nonconsumptive use by SWUA of 600 cfs of water from the Enlarged Strawberry Reservoir for electrical generation by SWUA at the Three Forks Power Plant.

       b.       Application No. A68837 (later designated as Water Right No. 43-10521) with a priority date of May 5, 1995 for the diversion and nonconsumptive use by SWUA of 600 cfs or 74,300 acre-feet of water from the Enlarged Strawberry Reservoir for electrical generation by SWUA at the Last Chance Power Plant, the Three Forks Power Plant and the Monks Hollow Power Plant.

The water rights described above (a. - h.) were acquired by SWUA in its own name, for the use and benefit of SWUA and its shareholders, as were the pending water right applications (a. - b.) described above.

The United States claims no right to make change applications concerning these water rights held in the name of SWUA.

As early as 1919, water users and other local leaders began considering the possibility of expanding the SVP. These early proposals evolved into what became known as the Bonneville Unit of the Central Utah Project ("CUP").

In 1956, the CUP was authorized as part of the Colorado River Storage Project Act.[5] Construction on the Bonneville Unit of the CUP began in approximately 1967. As part of the Bonneville Unit of the CUP, the United States constructed new water

---

[5]Act of April 11, 1956, ch. 203, 70 Stat. 105, *codified at* 43 U.S.C.A. §§ 620-620*o* (1986).

diversion, storage and conveyance facilities that rendered major elements of the existing

Strawberry Valley Project ineffective.  For example, the United States constructed the

Soldier Creek Dam on the Strawberry River below the Strawberry Dam, and then

removed the Strawberry Dam to create the Enlarged Strawberry Reservoir, with an active

capacity of approximately 951,360 acre-feet.  As the Utah Supreme Court explains:

> The new dam increased the capacity of Strawberry Reservoir from roughly
> 270,000 acre-feet to more than 1,100,000 acre-feet.  After the enlarged
> reservoir was in place, the parties entered into what they refer to as the 1991
> Operating Agreement.  Under the terms of this agreement, Strawberry is
> guaranteed annual delivery of 61,000 acre-feet from the enlarged reservoir.
> Strawberry's petition alleged that it had historically received some 70,000
> acre-feet. The United States in the federal action claims the historical
> average was 61,500 acre-feet. Whatever the figure, it appears that it no
> longer varies with the ebbs and flows of wet and dry years, but is fixed at
> 61,000 acre-feet annually. . . .

*Uintah Basin Water Rights*, 2005 UT 64, at ¶ 20 (footnote omitted).

The United States also constructed a new Strawberry collection system to divert

water from streams along the south slope of the Uinta mountains for conveyance and

storage in the Enlarged Strawberry Reservoir consistent with CUP water rights.

In addition, CUWCD and the United States constructed the Syar Tunnel and Sixth

Water Aqueduct to convey water from the Enlarged Strawberry Reservoir to the Spanish

Fork River through the Diamond Fork System.  The design and features of the Diamond

Fork System have changed since the 1991 Contract was negotiated but, as completed, the

system allows delivery at the confluence of Diamond Fork of the volume of Expanded

Strawberry Reservoir water to which SWUA is entitled under the 1991 Contract.

The current dispute first arose in August 1997, when Strawberry filed three change applications seeking to update and correctly reflect current points of diversion and place of use of Project water and to provide for municipal and industrial use.  More specifically, Strawberry sought the right to use Project water for the irrigation of small lots, including lawns and gardens, as opposed to larger agricultural tracts. In its protest before the State Engineer, the United States claimed that it was the owner of the water and urged the State Engineer to dismiss the Strawberry applications until the ownership issue could be resolved, presumably in Utah courts. . . .

Separate and apart from these initial change applications filed by Strawberry are competing applications filed by each of the parties in December 1997 seeking to recapture Project water after it has been fully utilized and passed beyond the control of either party. These applications are extremely ambitious and far-reaching. The application of the United States, filed December 4, 1997, seeks to appropriate 49,200 acre-feetof return flow of Project water for storage in Utah Lake and delivery in Salt Lake County. Strawberry's "exchange application," filed eight days later, seeks to recover the return flow from 64,400 acre-feet by pumping or diverting from existing wells, springs, and streams in southern Utah County. . . .

*Id.* at ¶¶ 21-22.  These events, coupled with growing frustration and mistrust concerning the administration of the 1991 Contract, precipitated litigation in both federal and state courts.

**Procedural History**

The Strawberry Water Users Association commenced this action by filing a complaint on April 26, 2001, seeking a declaratory judgment that a July 29, 1991 contract entered into by the SWUA, the United States and the Central Utah Water Conservancy District ("CUWCD") concerning the operation and maintenance of the enlarged Strawberry Reservoir "is binding upon, and enforceable against, all parties to the 1991

Contract, according to the plain meaning of its terms," as well as preliminary and

permanent injunctive relief specifically enforcing the 1991 Contract.  (Complaint, filed

April 26, 2001 (dkt. no. 1), at 2 ¶ 1.)  The original complaint also alleged the denial of

SWUA's "due process, equal protection, statutory, contract and other rights" by the

United States and CUWCD, for which SWUA sought injunctive relief.  (*Id.* at 3-4 ¶ 6.)

    The complaint filed in this case acknowledged that on the two days preceding the

filing of the complaint, SWUA had also filed petitions in two general water rights

adjudications pending in the Utah state district courts "to obtain a declaration of its

ownership interests in, and rights to use" water delivered to SWUA and its shareholders

by the Strawberry Valley Project pursuant to the 1991 Contract.  (*Id.* at 3 ¶ 5.)  Those

petitions sought a declaration of SWUA's ownership of water rights to Strawberry project

water (including a right to the return flows of project water delivered to SWUA

shareholders), its right to apply Strawberry project water to small parcels of land, and its

right to file applications with the Utah State Engineer to change the purpose and place of

diversion of Strawberry project water or to exchange rights to that water for rights to

other water, all without the consent or approval of the United States.

    On September 21, 2001, SWUA also filed an action in the Eighth District Court of

the State of Utah against the Utah State Engineer, the United States and the CUWCD,

which was subsequently removed to this court and consolidated with this action.  (*See*

Order Consolidating Actions, filed August 7, 2002 (dkt. no. 35), *Strawberry Water Users*

*Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV–344BSJ (D. Utah, filed April 29, 2002).)  That action sought *de novo* judicial review[6] of the Utah State Engineer's August 24, 2001 Memorandum Decision addressing two separate change applications that had been filed by SWUA and the United States, respectively.  The State Engineer approved both applications conditioned upon a further judicial determination as to who has the legal right to file such applications affecting Strawberry project water.  SWUA and the State Engineer moved to remand this proceeding back to state district court.[7]  The

_____

[6]*See* Utah Code Ann. § 63-46b-15 (2004); Utah Code Ann. § 73-3-14 (1989).

[7]The Utah State Engineer submits that SWUA's complaint in the "judicial review action" arguably "raises issues as to the ownership or the right to use water developed by the Strawberry Valley Project," but that "those ownership issues cannot be adjudicated by the State Engineer in taking action on either SWUA's or the USBOR's respective applications," and "[n]either can a court sitting in review of the State Engineer's decision.  Such issues must be litigated in a different action."  (Defendant Utah State Engineer's Memorandum of Law in Support of Motion for Remand, filed May 28, 2002 (dkt. no. 12), *Strawberry Water Users Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah), at 4.)  The State Engineer's view finds ample support in the case law cited in his memorandum, (*see id.* at 4-5), and comports with the Utah Supreme Court's more recent determination that the question of the nature and extent of the United States' and SWUA's rights to Strawberry project waters is the proper subject of the general adjudication pending in Third District Court, with deference to this court's construction of the pertinent federal statutes and contracts.  *See Uintah Basin Water Rights*, 2005 UT 64, at ¶¶ 60-62.

   The United States concedes that the ownership issues are not properly before this court through the removal of the "judicial review action" because "the State Engineer, in deciding a change of use application, and a state or federal court reviewing this decision do not have jurisdiction to adjudicate title to water rights," (Defendants' Proposed Pretrial Order, received February 15, 2005, at 5), but insists that removal of the action was proper.

   SWUA's attempt to interject water rights ownership issues into the "judicial review action" triggered the removal of that proceeding to this court under 28 U.S.C.A. §§ 1441 and 1442(a).  SWUA's insistence that the United States waived its sovereign immunity *as to those issues* through its participation in the change application proceedings, (*see* Memorandum in Support of Strawberry Water Users Association's Motion for Remand, filed May 14, 2002 (dkt. no. 6), *Strawberry Water Users Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah), at 8-10), proves to be unpersuasive.

   On April 16, 2003, SWUA filed a motion to dismiss its complaint in Civil No. 2:02-CV-344BSJ without prejudice, which was briefed, heard on July 14, 2003, and denied, without prejudice to plaintiff raising the matter at a later stage of the proceedings.  (*See* Order, filed August 29, 2003 (dkt. no. 168).)

   Though included among "all pending motions" calendared for hearing on July 14, 2003, counsel did not address the defendants' motions to remand or dismiss the "judicial review action."  At the conclusion of the July 14 hearing, while discussing a further hearing on pending motions to be held on September 9, 2003, counsel for

(continued...)

federal defendants filed a motion to dismiss SWUA's complaint in the "judicial review

action." (*See* United States' Motion to Dismiss or Alternatively for Judgment on the

Pleadings, filed June 14, 2002 (dkt. no. 18), *Strawberry Water Users Association v.*

*Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah), and supporting

memorandum (dkt. no. 19).)[8]

On November 28, 2001, SWUA filed an amended complaint,[9] asserting claims

based upon the alleged breach of the 1991 Contract, the National Environmental Policy

Act, 42 U.S.C.A. §§ 4321 *et seq.*, as well as constitutional and civil rights violations, and

---

[7](...continued)
SWUA noted that "[w]e still have the state engineer's motion to remand and some jurisdictional issues that were raised by Central and the United States which may be a little bit mooted at this point," (Transcript of Hearing, dated July 14, 2003, at 55:25-56:3 (Mr. Draney)), but nothing else was said. The court did not reset those motions for further hearing, and they have remained pending.

[8]Both the Utah State Engineer and the CUWCD had filed motions to dismiss the "judicial review action" in March of 2002 in the Eighth District Court, prior to removal to this court. (*See* Joint Motion of United States, Robert L. Morgan, and Central Utah Water Conservancy District to Enlarge Time on Briefing of Motions to Remand and to Stay Proceedings on Motion for Summary Judgment and Motions to Dismiss, filed May 22, 2002 (dkt. no. 8), *Strawberry Water Users Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah), at 2.) Likewise, SWUA had filed a motion for summary judgment on April 12, 2002, a copy of which is annexed as "Exhibit D" to the Notice of Removal by the United States, filed April 29, 2002 (dkt. nos. 1-2), *Strawberry Water Users Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah). The August 7, 2002 Order Consolidating Actions (dkt. no. 89) calendared "all pending motions" in Case No. 2:02-CV-344 for hearing on August 23, 2002, with further argument on motions on August 30, 2002. (*See* Minute Entry, dated August 23, 2002 (dkt. no. 105).) The court took the motions pending in Case No. 2:02-CV-344 under advisement, but at the request of counsel, the court deferred further action on them in favor of settlement negotiations. (*See* Minute Entry, dated August 30, 2002 (dkt. no. 107).)

[9]The federal defendants had moved to dismiss SWUA's complaint on jurisdictional grounds. (*See* Federal Defendants' Motion to Dismiss, filed August 27, 2001 (dkt. no. 11), and supporting memorandum (dkt. no. 9).) SWUA filed a response on September 20, 2001 (dkt. no. 16), together with a motion for leave to file an amended complaint (dkt. no. 15), and on October 26, 2001, the federal defendants filed a reply (dkt. no. 22). The dismissal motion was calendared for hearing on November 28, 2001, but was stricken in light of this court's ruling granting SWUA leave to file its amended complaint. (*See* Minute Entry, dated November 28, 2001 (dkt. no. 24).) SWUA's amended complaint superseded its original pleading, rendering the federal defendants' initial motion to dismiss moot.

seeking declaratory, injunctive and damages remedies,[10] costs and attorney's fees.  (*See* Amended Complaint, filed November 28, 2001 (dkt. no. 25), *passim*.)  The federal defendants moved to dismiss the Amended Complaint,[11] which motion was briefed and argued at the August 30, 2002 hearing, and was taken under advisement.  (*See* Minute Entry, dated August 30, 2002 (dkt. no. 107).)[12]

On May 21, 2002, SWUA filed a motion for preliminary injunction (dkt. no. 53) requiring the federal defendants to make "temporary" Central Utah Project irrigation water available to SWUA and its shareholders on a basis equal to that of other water users.  The motion was briefed and heard on August 23 & 30, 2002.  Based upon the arguments and submissions of counsel and the court's review of the administrative record, the motion for preliminary injunction was denied.  (*See*  Minute Entry, dated August 30, 2002 (dkt. no. 107); Order Denying Plaintiff's Motion for Preliminary

---

[10]In response to the defendants' motions to dismiss raising jurisdictional issues under the Tucker Act, 28 U.S.C.A. § 1346(a)(2) (1993) ($10,000 jurisdictional limit on claims against the United States in federal district court), SWUA has elected not to pursue its damages claims in this proceeding, purporting to reserve such claims for some future proceeding.

[11](*See* Federal Defendants' Motion to Dismiss Amended Complaint, filed February 4, 2002 (dkt. no. 32), and memorandum in support (dkt. no. 33); Ronald Johnston's Motion to Dismiss the Amended Complaint, filed February 4, 2002 (dkt. no. 29), and memorandum in support (dkt. no. 30).)  Defendant Johnston's motion and much of the federal defendants' motion were withdrawn following the parties' stipulation to the partial dismissal of SWUA's Amended Complaint.  (*See* Notice of Partial Withdrawal of Federal Defendants' Motions to Dismiss, filed April 28, 2003 (dkt. no. 126).)

[12]The federal defendants' motion to dismiss was calendared for re-argument among "all pending motions," first on June 13, 2003, (*see* Minute Entry, dated May 23, 2003 (dkt. no. 137), and then July 14, 2003 (*see* Amended Notice of Hearing, filed June 12, 2003 (dkt. no. 144), but was not addressed by counsel at the hearing.  (*See* Minute Entry, dated July 14, 003 (dkt. no. 150); Transcript of Hearing, dated July 14, 2003, *passim*.)  This court did not formally reset this motion, and counsel for the federal defendants filed no subsequent request that it be reheard or given further consideration.

Injunction, filed September 13, 2002 (dkt. no. 108).[13])

Thereafter, counsel for the parties engaged in settlement negotiations that culminated in a Stipulation and Partial Settlement Agreement, filed March 31, 2003 (dkt. no. 116), and the entry of a Stipulated Order of Partial Dismissal on April 2, 2003 (dkt. no. 117), dismissing all of SWUA's claims arising from alleged constitutional and civil rights violations, including the Third, Fourth and Fifth Claims for Relief set forth in the Amended Complaint.

On April 28, 2003, the federal defendants filed an answer to the Amended Complaint and a counterclaim (dkt. no. 125), followed by the CUWCD's filing of a Counterclaim on June 3, 2003 (dkt. no. 142).  (*See* Minute Entry, dated May 23, 2003 (dkt. no. 137); Order, filed June 5, 2003 (dkt. no. 143).)  SWUA filed motions to dismiss the counterclaims,[14] which were briefed, argued at the hearing on September 8, 2003, and denied.  (*See* Minute Entry, dated September 8, 2003 (dkt. no. 170); Order Denying Motions to Dismiss Counterclaims, filed October 3, 2003 (dkt. no. 185).)

---

[13]SWUA filed a notice of interlocutory appeal from the denial of the motion for preliminary injunction, (*see* Notice of Interlocutory Appeal, filed September 17, 2002 (dkt. no. 110)), but that proceeding was ultimately dismissed by stipulation of the parties.  (*See* Order, filed April 3, 2003, *Strawberry Water Users Association v. United States*, Case No. 02-4182 (10th Cir.), docketed as mandate on April 7, 2003 (dkt. no. 118).)

[14](Plaintiff's Motion to Dismiss the Counterclaim of the United States, filed May 28, 2003 (dkt. no. 139), and supporting memorandum (dkt. no. 140); Plaintiff's Motion to Dismiss the Counterclaim of the Central Utah Water Conservancy District, filed July 2, 2003 (dkt. no. 147), and supporting memorandum (dkt. no. 148).)
    SWUA also filed a reply to each counterclaim, raising a series of defenses.  (*See* Plaintiff's Reply to the Counterclaim of the Federal Defendants, filed May 28, 2003 (dkt. no. 141); Plaintiff's Reply to the Counterclaim of the Central Utah Water Conservancy District, filed July 2, 2003 (dkt. no. 149).)

SWUA sought leave to further amend its complaint,[15] but such leave was denied in favor of amendment of SWUA's replies to the defendants' counterclaims, which was allowed upon oral motion at the October 29, 2003 hearing.  (*See* Minute Entry, dated October 29, 2003 (dkt. no. 196); Order Denying Motion to Amend Complaint and Granting Motion to Amend Replies to Counterclaims, filed December 15, 2003 (dkt. no. 204).)[16]  SWUA filed its amended replies on November 12, 2003 (dkt. nos. 200, 201).

At the October 29, 2003 hearing, the court also set a schedule for pretrial proceedings in this case, with the Final Pretrial Conference set for December 1, 2004. (*See* Minute Entry, dated October 29, 2003 (dkt. no. 196); Case Management Order, filed October 30, 2003 (dkt. no. 197).)

On March 12, 2004, SWUA filed a Motion for Partial Summary Judgment on the Issue of Rates of Flow (dkt. no. 205), and supporting memorandum (dkt. no. 206), seeking declaratory relief establishing SWUA's entitlement to deliveries of water from the expanded Strawberry Reservoir "at such rates of flow as SWUA shall demand, not to exceed 600 [cubic feet per second]," as provided in the parties' 1991 Contract.  At the same time, the CUWCD moved to strike portions of SWUA's amended reply to

---

[15](Plaintiff's Motion for Leave to File Second Amended Complaint, filed September 18, 2003 (dkt. no. 174), and supporting memorandum (dkt. no. 175).)

[16]The court also heard and denied the CUWCD's September 29, 2003 motion to dismiss SWUA's "judicial review action" claims (dkt. no. 180) for failure to prosecute that action within the time allowed by statute, *see* Utah Code Ann. § 73-3-15 (1989 & Supp. 2005).  (*See* Minute Entry, dated October 29, 2003 (dkt. no. 196); Order Denying CUWCD's Motion to Dismiss Plaintiff's Judicial Review Claims and Plaintiff's Motion for Extension of Time, filed December 15, 2003 (dkt. no. 203).)

CUWCD's counterclaim that addressed issues concerning approval and construction of the Utah Lake System.[17]  Two weeks later, the federal defendants filed a similar motion to strike portions of SWUA's amended reply,[18] together with a cross-motion for summary judgment on the issues of rates of flow and ownership and control of rights to Strawberry project water.[19]  The latter motion sought a declaration that "[f]ederal and state law forbid the change of use of project water without the approval of the Secretary of the Interior, and Plaintiff Strawberry Water Users Association . . . should be enjoined from carrying out any change of use of the SVP water rights;" that SWUA "has surrendered its interest in the federal Strawberry Valley Project . . . water rights in exchange for a firm water supply from the enlarged Strawberry Reservoir of the Central Utah Project"; and that the United States "controls the disposition of return flows from the SVP and other federal reclamation projects, particularly once those return flows have have left project boundaries."  (Federal Defendants' Motion for Partial Summary Judgment on the Issue of Rates of Flow and Cross Motion for Partial Summary Judgment, filed March 30, 2004 (dkt. no. 213), at 2.)

_____

[17](Motion to Strike Portions of Amended Reply to Central Utah Water Conservancy District's Counterclaim, filed March 12, 2004 (dkt. no. 207), and supporting memorandum (dkt. no. 208).)

[18](Federal Defendants' Motion to Strike and to Dismiss Plaintiff's Defenses or Claims Concerning the Utah Lake System, NEPA, and Damages Over $10,000, filed March 30, 2004 (dkt. no. 211), and supporting memorandum (dkt. no. 212).)

[19](Federal Defendants' Motion for Partial Summary Judgment on the Issue of Rates of Flow and Cross Motion for Partial Summary Judgment, filed March 30, 2004 (dkt. no. 213), and supporting memorandum (dkt. no. 214).)

On May 3, 2004, SWUA filed its Cross Motion for Partial Summary Judgment re:

Change Applications and Ownership (dkt. no. 236), with a supporting memorandum (dkt.

no. 237), asserting its entitlement to judgment as a matter of law that

> (1) SWUA is a person entitled to the use of water under Utah Code Ann. §
> 73-3-3(2) and therefore, is entitled file change applications on the SVP
> water rights — without Secretary approval; (2) SWUA and its shareholders
> did not surrender their rights and interests in the SVP water rights under the
> 1991 Contract; and (3) SVP return flows belong to the SVP water users and
> are to be used for SVP purposes.

(*Id.* at 2.)

The motions to strike and the motions concerning rates of flow were briefed and

argued at the May 18, 2004 hearing.  The court granted the motions to strike, at least in

part, and denied SWUA's motion for partial summary judgment concerning rates of flow.

(*See* Minute Entry, dated May 18, 2004 (dkt. no. 251).)  In the court's view, SWUA's

assertions pleaded in its replies concerning the defendants' involvement in the Utah Lake

System proved to be premature at best, and largely premised upon SWUA's novel and

expansive theory of its right to Strawberry project water return flows.  SWUA's

allegations concerning the potential breach of the 1991 Contract's requirement that the

defendants deliver water at the rate designated by SWUA up to 600 cubic feet per second

asserted a purely hypothetical injury; SWUA made no showing as to any actual instance

in which the requested rate of flow had not been furnished, and counsel for the defendants

indicated that by May of 2004, no issues of compliance with the National Environmental

Policy Act (NEPA) remained pending that would impair the defendants' ability to comply

with the rate-of-flow requirements under the 1991 Contract.  Absent a sufficient showing

of an actual or imminent material breach of the 1991Contract's rate-of-flow requirements,

the court declined to grant declaratory or injunctive relief in favor of SWUA concerning

rate-of-flow compliance.[20]

The parties' summary judgment motions concerning ownership and control of

rights to Strawberry project water and the right to make change applications in light of the

1991 Contract were briefed and argued at the August 30, 2004 hearing, and were taken

under advisement.  (*See* Minute Entry, dated August 30, 2004 (dkt. no. 281).)[21]

On September 1, 2004, the federal defendants and the CUWCD filed motions for

summary judgment, the federal defendants asserting that there had been no final federal

agency action comprising a taking, transfer or restriction of use regarding SVP return

flows," and that SWUA thus could not invoke jurisdiction under the Administrative

Procedure Act to raise the return flow issue;[22] the CUWCD asserted an entitlement to

judgment as a matter of law concerning any remaining claims under SWUA's First,

---

[20]This court reserved on the balance of the issues raised by the federal defendants' cross motion.  (*See* Minute Entry, dated May 18, 2004 (dkt. no. 251).)

[21]The parties had also filed cross motions for partial summary judgment concerning SWUA's power development rights under the 1991 Contract (dkt. nos. 241, 256, 264), which were briefed and argued at the August 30, 2004 hearing, and were taken under advisement.  (*See* Minute Entry, dated August 30, 2004 (dkt. no. 281).)  The issues raised by those motions have been the subject of continuing pretrial conference proceedings in this case, and will be addressed by this court in a subsequent order.

[22](Federal Defendants' Motion for Partial Summary Judgment on the Issue of No Reviewable Agency Action Regarding SVP Return Flows, filed September 1, 2004 (dkt. no. 284), at 2.)  The federal defendants' motion addressed the Ninth, Tenth, Eleventh, Twelfth, Fifteenth, Sixteenth and Seventeenth Defenses pleaded in SWUA's amended reply to the federal defendants' counterclaim.  (*Id.*)

Second, Sixth or Seventh Claims for Relief that were not already addressed by the parties'
prior motions for summary judgment.[23]  These motions were briefed, argued at the
November 4, 2004 hearing, and taken under advisement.  (*See* Minute Entry, dated
November 4, 2004 (dkt. no. 296).)  Following the hearing, on November 8, 2004, SWUA
submitted supplemental documents concerning its change applications (dkt. no. 298),
followed by a request for consideration of a supplemental memorandum, filed November
15, 2004 (dkt. no. 301), with supporting memorandum (dkt. no. 302).

On November 5, 2004, the court entered an Order rescheduling the December 1,
2004 Final Pretrial Conference for January 20, 2005 (dkt. no. 297), which upon joint
motion of the parties was again reset for February 16, 2005.  (*See* Order Resetting Pretrial
Hearing Date, filed November 23, 2004 (dkt. no. 306).)[24]

Less than a week before the Final Pretrial Conference, on February 10, 2005,
SWUA filed a Motion to Stay or in the Alternative Motion to Certify a Question to the
Utah Supreme Court (dkt. no. 320), with supporting memorandum (dkt. no. 321), asking
this court to "stay further proceedings on the issues of ownership and control of the SVP

---

[23](Central Utah Water Conservancy District's Motion for Summary Judgment, filed September 1, 2004
(dkt. no. 282), at 1-2.)

[24]SWUA had also moved to vacate the existing pretrial schedule in favor of a Rule 16 status and
scheduling conference concerning motions then pending in the case, and requesting that prior to the Final
Pretrial Conference, the court "issue proposed 'pre-rulings'" on seventeen pending motions, to which counsel
could then respond, in light of further discovery and other developments since those motions were filed, briefed
and in most cases, argued.  (Memorandum in Support of SWUA's Motion to Vacate Case Management Order,
Request for Rule 16 Pretrial Scheduling Conference and Request for Hearing on Pending Motions, filed
November 15, 2004 (dkt. no. 300), at 4.)  The court declined SWUA's invitation to make provisional rulings on
motions in favor of addressing the question of what substantive issues remain in genuine dispute in the context
of the Final Pretrial Conference.

water rights until the parallel issues pending in the state court general adjudications are fully resolved," or to certify a question of Utah state law to the Utah Supreme Court: "Are SWUA or its shareholders 'person[s] entitled to the use of water' under Utah Code Ann. § 73-3-3(2)?" (*Id.* (dkt. no. 321), at 8-9.)[25]  The defendants filed memoranda opposing this motion (dkt. nos. 322, 323).

At the Final Pretrial Conference on February 16 & 17, 2005, this court asked counsel for all parties to delineate those substantive questions that they contend remain for decision in this case.  Counsel for SWUA responded that the "remaining substantive questions all revolve around the interpretation and enforcement of the 1991 contract." (Transcript of Hearing, dated February 16, 2005, at 3:25-4:2 (Mr. Draney).)  In particular, SWUA's Amended Complaint seeks a declaration that the 1991 Contract entitles the SWUA to the delivery of 61,000 acre-feet of water per year, without reduction because of stream flows, evaporation, environmental concerns, or other reasons; that this water will be delivered at the rate of flow specified by SWUA, up to 600 cubic feet per second with priority over uses for the Bonneville Unit of the Central Utah Project; and that Article 19 of the 1991 Contract entitles SWUA to the benefit of the use of 74,300 acre-feet per year released from the enlarged Strawberry Reservoir through the Diamond Fork System for the purpose of power production by SWUA facilities.  (*Id.* at 4:13-10:13, 14:19-15:21,

---

[25]SWUA's motion was based in part upon the colloquy between court and counsel at oral argument before the Utah Supreme Court on February 1, 2005 in its appeal from the dismissal of SWUA's petitions in the general water rights adjudications pending in Third and Eighth District Courts.

17:9-21 (Mr. Draney).)  SWUA also seeks a declaration that under the 1991 Contract,

"the water users, the men and women who put this water to beneficial use are the

beneficial owners and the interests of the United States is at most nominal," and that

"they have the right, Strawberry Water Users Association, to use and reuse those return

flows just like the United States said in" *Ide v. United States*, 263 U.S. 497 (1924).  (*Id.* at

16:16-24 (Mr. Draney).)

        Counsel for the United States responded that there is no genuine dispute under the

terms of the 1991 Contract concerning SWUA's entitlement to 61,000 acre-feet per year,

at its requested rate of flow up to 600 cubic feet per second; SWUA's rights under the

1991 Contract concerning power production remain in controversy in light of legislative

and factual developments subsequent to the making of the 1991 Contract.  (*Id.* at 18:8-

23:11 (Mr. Rich).)  And "[w]ith regard to beneficial title," according to counsel for the

federal defendants, "we have never contested, the United States has never contested that

the right to use water beneficially resides in the members of the Strawberry Water Users

Association.  The water for irrigation is appurtenant to the land by statute.  We have never

contested that."  (*Id.* at 23:13-18 (Mr. Rich).)   Counsel questioned whether SWUA itself

has "beneficial title" because SWUA makes "no beneficial use of the waters at all" and

"[a]ll beneficial use of the waters of the Strawberry Valley Project are made either by the

United States or by the farmers," (*id.* at 23:19-23 (Mr. Rich)); counsel framed the

ownership issue in these terms: "Does the in lieu language in Article 3 [of the 1991

Contract] give the United States ownership of the Strawberry Valley Project water rights[?]" (*Id.* at 24:2-4.)  According to the federal defendants, the Strawberry project has been subsumed by the larger Central Utah Project facilities, including the enlarged Strawberry Reservoir.  (*Id.* at 24:15-23 (Mr. Rich).)  In exchange for guaranteed annual delivery of 61,000 acre-feet of water, counsel submits, SWUA in Article 3 of the 1991 Contract "conveyed away . . . any vestige of control over the water rights and the facilities" of the Strawberry project; "The only thing they held on to and it's their water users that have it, is the right to put the water to beneficial use. . . . All they have is the right to receive . . . pursuant to the contract provisions."  (*Id.* at 39:11-12, 41:12-21 (Mr. Rich).)  Any change in the point of diversion or the purpose or place of use of project water would require the participation and authorization of the United States, consistent with the purposes of the project as determined by Congress.  (*Id.* at 51:1-56:25.)

Counsel for the CUWCD likewise acknowledged SWUA's annual entitlement to 61,000 acre-feet of water at a rate of flow up to 600 cfs under the 1991 Contract.  (*Id.* at 57:20-59:9 (Mr. Barnes).)  CUWCD contends that the power privilege provisions of Article 19 of the 1991 Contract reflected an "agreement to agree" on power issues in a separate contract to be negotiated by the parties within a five-year period that has since lapsed without any agreement being reached.  (*Id.* at 59:10-60:24, 62:13-63:3.)  Counsel for the CUWCD reads Article 3 of the 1991 Contract to reflect SWUA's trade of "their contractual rights to the use of all storage water" in the Strawberry Reservoir under prior

contracts for "the guaranteed premium first priority 61,000 acre-feet and 600 CFS."  (*Id.* at 63:20-64:6.)  Concerning the right to file change applications, "Our concern . . . is whether Strawberry may file applications that would affect or limit or interfere with Central Utah's ability to operate its facilities in a manner consistent with the objectives of the 1991 contract and the Central Utah Project mandates."  (*Id.* at 65:11-16.)

There being no genuine dispute concerning SWUA's entitlement to the annual delivery of 61,000 acre-feet of water from the enlarged Strawberry Reservoir, at the rate of flow specified by SWUA up to 600 cfs under the terms of the 1991 Contract,[26] court and counsel narrowed the focus of the final pretrial conference to the issues of ownership and control of water rights to Strawberry project water held in the name of the United States in light of the federal reclamation laws, Utah water law and Article 3 of the 1991 Contract, including the respective rights of the United States and SWUA to recapture and control the return flow of Strawberry project water, and SWUA's claims concerning power production under Article 19 of the 1991 Contract.

On the second day of the Final Pretrial Conference, the court made a provisional bench ruling concerning the ownership and control of Strawberry project water rights held in the name of the United States, concluding that (1) the United States retains legal ownership of such rights under Utah law, federal reclamation laws and the 1991 Contract,

---

[26]Counsel for SWUA sought a declaration that questions of compliance with the National Environmental Policy Act (NEPA) could never again be raised concerning the delivery of water pursuant to the 1991 Contract.  (*See* Transcript of Hearing, dated September 17, 2005 (p.m. session), at 12:4-10, 13:7-10 (Mr. Draney).)  The court declined to make such a declaration as to future circumstances as yet unknown.

and remains the appropriator of record as to those rights, subject to its obligation under the 1991 Contract to deliver water to SWUA and its water users; (2) that the United States did not diminish or transfer those rights in the 1991 Contract; (3) that the United States may file an appropriate change application with the State Engineer in its own name; and (4) that under the 1991 Contract, SWUA does not have the power to file a change application with the State Engineer affecting water rights held in the name of the United States without the participation or approval of the United States.  (*See* Transcript of Hearing, dated February 17, 2005 (p.m. session), at 2:6-6:10 (the Court).)  In the court's view,  "The United States has a contract with the Association. . . . All I'm saying is that the United States has the power to make the filing.  The Association needs to either have a joint filing or permission from the appropriator . . . to seek the changes that it has heretofore sought to make."  (*Id.* at 6:11-18; *see also id.* at 12:21-13:4.)

In the context of the continuing discussion with counsel, the court made some observations concerning the parties' claims to the return flow of Strawberry project water delivered to SWUA, but made no bench ruling on those claims.  (*See id.* at 19:10-34:25.) The court tentatively concluded that triable issues remain concerning SWUA's claims concerning power production under Article 19 of the 1991 Contract, and set provisional pretrial and trial dates on those issues.  (*Id.* at 6:22-7:10, 11:3-18, 35:11-39:9.)

### The *Uintah Basin Water Rights* Opinion

In the September 27, 2005 *Uintah Basin Water Rights* opinion, the Utah Supreme

Court parsed the claims and assertions of both SWUA and the United States in the

proceedings before the state courts and before this court, and undertook to delineate

which issues should be decided in the Utah state courts under Utah law and which should

be addressed by this court in construing the pertinent federal statutes and contractual

provisions.

> According to the Utah Supreme Court,
>
> The 1991 Operating Agreement is not before us, nor are the earlier
> agreements of 1926, 1928, and 1940.  Under 43 U.S.C. § 390uu (2005), it is
> the prerogative of the federal district court to examine the contractual
> relationship and "*to adjudicate, confirm, validate, or decree the contractual
> rights . . . regarding any contract executed pursuant to Federal reclamation
> law.*"  (Emphasis added.)  Separate and apart from this prerogative is the
> prerogative of Utah courts to determine how the contractual relationship
> plays out under Utah water law.  That law cannot be changed by contract.
> We reiterate that the Secretary of the Interior in carrying out the provisions
> of the Reclamation Act is obliged to *proceed in conformity with [state]
> laws . . . relating to the control, appropriation, use, or distribution of
> water.*"  43 U.S.C. § 383 (emphasis added).

*Id.* at ¶ 32 (emphasis in original).

The Utah Supreme Court rejected the United States' assertion that "that as the

'title owner of record' it alone has the authority to file a change application with the State

Engineer," instead "correct[ing] the misreading of our statutory and case law regarding

'ownership' and the filing of change applications" to reflect the "continued recognition of

the right of the mutual irrigation companies to make change application decisions for the

benefit of the collective whole of the shareholders whom they represent and who, through

their votes, control the boards of directors."  *Id.* at ¶¶ 43, 44.  Recognizing that "[h]ere the

relationship is three-layered: the United States, the Strawberry companies, and the

shareholders," the Utah court expressed the view that the United States "as holder of the

certificate[s]" of appropriation of the Strawberry project water issued by the Utah State

Engineer, may not make a change application as to the diversion or purpose of use of that

water that would be "at variance with the Strawberry companies and their shareholders,

whose interests are aligned" because to do so "would be contrary to" the Utah case law

construing Utah Code Ann. § 73-3-3(2)(a)(i)-(iii) (1989 & Supp. 2005)—the Utah statute

governing change applications—as well as the United States' protective obligations "'that

necessarily devolve upon it from having *mere title to water rights* . . . when the beneficial

ownership of these water rights resides elsewhere,'" *viz.*, the Strawberry water users. *Id.*

at ¶ 38, 42 (quoting *Nevada v. United States*, 463 U.S. 110, 127 (1983) (emphasis

supplied by Utah court)).

> Casting the United States in a protective role for the benefit of the ultimate
> users is the approach embraced by the United States Supreme Court in
> *Nevada v. United States*, 463 U.S. 110 (1983). . . .  The Court chided the
> government for wholly ignoring "the [protective] obligations that
> necessarily devolve upon it from having *mere title to water rights* . . . when
> the beneficial ownership of these water rights resides elsewhere." *Id.* at 127
> (emphasis added).
>
> * * * *
> [E]ven if the United States were entitled to file the applications, it could not
> do so in derogation of the rights and entitlements of the ultimate users in
> whose interest it is obliged to act.  Failure to protect this interest would
> violate the principles established in *Nevada*.

*Id.* at ¶¶ 38, 43 (footnote omitted).

The Utah Supreme Court acknowledged that "Utah's statute empowers the holder of an 'approved application for the appropriation of water' to file" a change application, *id.* at ¶ 43 n.11 (citing Utah Code Ann. § 73-3-3(8)(a)), and did "not foreclose the possibility that in the proper circumstance the United States should be allowed to file the change application," but did not decisively construe the Utah statute *vis-a-vis* the power of the United States as holder of the certificates of appropriation of Strawberry project water to make such an application.  It did postulate that under Utah case law "the United States stands in the same shoes worn by the mutual irrigation companies and . . . it holds title for the benefit of the ultimate users, and for no other purpose, a role it must share with the Strawberry Water Companies." *Id.* at ¶ 37 (citing *East Jordan Irrigation Co. v. Morgan*, 860 P.2d 310 (Utah 1993), and *Badger v. Brooklyn Canal Co.*, 922 P.2d 745 (Utah 1996)).  "In Utah, 'ownership' of water rights is equated with 'right of use,' and title can be held in a protective capacity for those who have that right." *Id.* at ¶ 61.

Noting that "[i]n its federal court counterclaim, the United States advances the position that '[t]he federal government retains the ultimate approval authority with respect to both the distribution of project water and any change of place or purpose of use that might be contemplated,'" and that "[i]t claims that this is mandated both by the contract between the parties and by federal statutes," *id.* at ¶ 45, the Utah Supreme Court explained that it

> must now defer to the federal court for construction of the federal statutes
> as well as the contracts between the parties. We note, however, that the

position advanced by the United States seriously calls into question the primacy of state water law guaranteed by Section 8 of the Reclamation Act. Notwithstanding the over-arching importance of this issue, any further response by Utah courts must await the federal court review.

*Id.* at ¶ 46.

Indeed, the United States "has consented to joinder in federal district court "to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to federal reclamation law." 43 U.S.C. § 390uu (2005) (emphasis added)." *Id.* at ¶ 24. And as the Utah court acknowledges, "[u]nder 43 U.S.C. § 390uu (2005), it is the prerogative of the federal district court to examine the contractual relationship and *'to adjudicate, confirm, validate, or decree the contractual rights . . . regarding any contract executed pursuant to Federal reclamation law*.' (Emphasis added.)" *Id.* at ¶ 32 (emphasis supplied by Utah court).

The Utah Supreme Court thus has deferred to this court's judgment concerning whether as a matter of federal law or federal contract the United States has the authority with respect to both the distribution of project water and approval of any change of place or purpose of use that might be contemplated by SWUA or its shareholders, as well as any other disputes among these parties concerning "the manner in which the contracts between them should be construed." *Id.* at ¶¶ 46, 62.[27]

---

[27]To this extent, at least, the deference to state court adjudication of the water rights of the United States encouraged in *United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002), consistent with *Brillhart v. Excess Ins. Co. Of Am.*, 316 U.S. 491 (1942), and here urged by SWUA in the form of a stay of these proceedings, would not serve to resolve the federal questions presented in this case—a case commenced by

(continued...)

As outlined by counsel at the Pretrial Conference, the substantive issues

concerning construction of federal reclamation laws and the 1991 Contract that remained

for decision in this case include (1) the extent of the United States' authority over water

rights to Strawberry project water held in the name of the United States, including its

authority to file change applications with the Utah State Engineer without the consent of

SWUA or to approve change applications filed by SWUA or its shareholders affecting the

place of diversion, place of use or the purpose of use of Strawberry project water; (2) the

respective rights of the United States and SWUA to recapture the return flow of

Strawberry project water delivered to SWUA and its water users; (3) SWUA's claims

concerning power production under Article 19 of the 1991 Contract.

Revisiting the pretrial colloquy concerning these issues in light of the *Uintah Basin*

*Water Rights* opinion, it may prove helpful to clarify the basis for this court's provisional

ruling on at least some of these questions, and to further examine the federal reclamation

laws and the parties' federal contracts that may bear upon those issues.

### The United States' Authority over Distribution of Strawberry Project Water and Change of Point of Diversion or Place or Purpose of Use

Relying heavily upon *Nevada v. United States*, SWUA insists that SWUA—not the

---

[27](...continued)

SWUA in this forum.  (*See* Memorandum in Support of SWUA's Motion to Stay or in the Alternative Motion to Certify a Question of State Law to the Utah Supreme Court, filed February 10, 2005 (dkt. no. 321), at 1-4.) Federal Defendants' Opposition to SWUA's Motion to Stay or in the Alternative Motion to Certify a Question of State Law to the Utah Supreme Court, filed February 15, 2005 (dkt. no. 322), at 1-7; Preliminary Statement in Opposition to Motion to Stay or, in the Alternative, Motion to Certify a Question of State Law to the Utah Supreme Court, filed February 15, 2005 (dkt. no. 323), at 1-4.)

United States—has equitable ownership of Strawberry project water put to beneficial use by its shareholders and thereby has been empowered under Utah law to make applications for change of purpose or place of diversion of Strawberry project water without any need for approval or participation by the United States.

It remains uncontroverted that the certificates of appropriation for Strawberry project water used by SWUA shareholders were issued in the name of the United States by the Utah State Engineer.  The United States has long been recognized as the legal owner of the water rights to Strawberry project water, and for that reason is a necessary party to an adjudication affecting those rights.  *See Spanish Fork West Field Irr. Co. v. United States*,  9 Utah 2d 428, 432, 347 P.2d 184, 187 (1959) (in an adjudication of the rights to use the waters of the Spanish Fork River system, including Strawberry project water, "the United States is the owner of water rights of this system and is a necessary party to this action").  The Utah Supreme Court's *Uintah Basin Water Rights* opinion leaves no doubt that "[i]n Utah, 'ownership' of water rights is equated with 'right of use,' and title *can be held in a protective capacity* for those who have that right," *id.* at ¶ 61, vindicating both SWUA's claim of equitable ownership of the right to put Strawberry project waters to beneficial use on its shareholders' lands and the United States' claim of legal ownership of those rights as reflected in the certificates of appropriation issued in its name.  Those certificates continue to have legal significance and legal consequence.[28]

---

[28]If the State Engineer is

(continued...)

At a minimum, the United States, as the legal owner and appropriator of record, must voluntarily join in a SWUA initiated application before the State Engineer for a point of diversion change or a change of purpose.  A SWUA application, standing alone is insufficient.

The obligatory presence of the United States is justified by the extended history of the project and the expanded project and the statutes all as fortified by the terms of the 1991 Contract.  At the time the 1991 Contract was formed, the United States remained the legal owner and appropriator of record of Strawberry project water rights held in its name.  The United States did not transfer or convey its legal ownership interest in those rights to SWUA under the terms of the 1991 Contract.

May the SWUA, speaking for its user-shareholders, unilaterally extinguish the status, interest and responsibilities of the United States and unilaterally declare the United States superfluous and no longer necessary to achieve the expanded project purposes?  The short answer is "no."

The United States has guaranteed the delivery of a certain quantum of water.  The

---

[28](...continued)
satisfied that appropriation has been made in accordance with the application and that the water has been put to a beneficial use, the State Engineer will issue a certificate of appropriation. § 73-3-17.  The certificate sets forth the name of the user, the quantity of water, the time the water is to be used during the year, the source of the water, and the date of appropriation.  *Id.* The certificate constitutes prima facie evidence of the owner's right to use the water in the quantity and for the purpose described, subject to prior rights.  *Id.*; *Lake Shore Duck Club v. Lake View Duck Club*, 50 Utah 76, 81, 166 P. 309, 311 (1917).  Until the certificate is issued, any right to use the water remains inchoate. *See Mosby Irrigation Co. v. Criddle*, 11 Utah 2d 41, 46, 354 P.2d 848, 852 (1960).

*Little v. Greene & Weed Inv.*,  839 P.2d 791, 794 (Utah 1992).

United States has an interest in making sure the water is applied for the statutory purpose to the land to which it appertains, all of which statutory obligations are read into the contracts of the parties, including the 1991 contract.  Of course, even the plaintiff seeks a declaration that such 1991 contract is valid and enforceable.

May the United States, as the legal owner and appropriator of record initiate a change application before the State Engineer?  The short answer is "yes."  However, the United States has its own constraints.  What it does must be for the benefit of the project and of the project water users and in compliance with the federal statutes, the contracts, and the applicable Utah water law.

Such constraints dictate seeking the cooperation in such an effort of the users or the association which speaks for them, although as a matter of pure legal theory under the federal statutes, the project history, and the 1991 Contract it may initiate an application on its own.

Both the United States and the SWUA remain bound to each other under the 1991 Contract.  Neither can act without due regard for the other with reference to filing a change application concerning Strawberry project water rights held in the name of the United States for the ultimate use and benefit of the SWUA water users.   As a matter of federal law and federal contract as well as state law, should the United States file a change application in its own name involving Strawberry project water rights, it cannot act "in derogation of the rights and entitlements of the ultimate users in whose interest it

-36-

is obliged to act," recognizing that "the United States stands in the same shoes worn by the mutual irrigation companies and that it holds title for the benefit of the ultimate users, and for no other purpose, a role it must share with the Strawberry Water Companies," *viz.*, SWUA. *Uintah Basin Water Rights*, 2005 UT 64, at ¶¶ 37, 43.

### Ownership and Control of Strawberry Project Water "Return Flows"

By the time of the Final Pretrial Conference in February of 2005, both the SWUA and the United States took the position that their interests in the Strawberry project water delivered from the Uintah Basin into the Spanish Fork River system extended to encompass the recapture and control of the return flows of Strawberry project water used by SWUA facilities and upon Strawberry project lands at any point in the system through and including the waters of Utah Lake.

Both had previously filed appropriation applications "seeking to recapture Project water after it has been fully utilized and passed beyond the control of either party. *Uintah Basin Water Rights*, 2005 UT 64, at ¶ 22. "The application of the United States, filed December 4, 1997, seeks to appropriate 49,200 acre-feet of return flow of Project water for storage in Utah Lake and delivery in Salt Lake County. Strawberry's 'exchange application,' filed eight days later, seeks to recover the return flow from 64,400 acre-feet by pumping or diverting from existing wells, springs, and streams in southern Utah County," (*id.*)—a volume of "return flow" water exceeding the 61,000 acre-feet guaranteed to be delivered to SWUA under the 1991 Contract.

Cases such as *Ide v. United States*, 263 U.S. 497 (1924), have long recognized that an irrigation project constructed and operated under the Reclamation Act may recapture "return flow" in the form of drainage or seepage of project water used on project lands and apply the recaptured water on additional project lands.  An irrigation project, the *Ide* Court reasoned, "is intended to cover, and does cover, the reclamation and cultivation of all the lands within the project.  A second use in accomplishing that object is as much within the scope of the appropriation as a first use is."  263 U.S. at 505.  And as SWUA submits, in Utah "[t]he law is well settled, in fact the authorities all agree, that one landowner receiving waste water which flows, seeps, or percolates from the land of another cannot acquire a prescriptive right to such water, nor any right (except by grant) to have the owner of the land from which he obtains the water continue the flow." *Estate of Steed Through Kazan v. New Escalante Irr. Co.*, 846 P.2d 1223, 1224 (Utah 1992).  In *New Escalante*, one landowner began employing a more efficient pressurized sprinkling system to apply water to his lands, reducing the volume of waste runoff and seepage that flowed down a wash where it was diverted for use by another landowner; otherwise, there was no natural stream flow in the wash from the Escalante River.  *New Escalante* indicated that water users may increase the efficiency of their use of water, thereby reducing waste runoff or seepage and increasing their own use of the water, without running afoul of the water rights of downstream appropriators.

As a general proposition,

-38-

The holder of a water right owns no title to any molecules of water until that water is diverted.  Once an appropriator diverts water and brings it under his control and possession, the appropriator owns it as personal property.  *Madison v. McNeal,* 171 Wash. 669, 674, 19 P.2d 97 (1933).  This principle is generally held throughout the Western States.  *See* 1 S. Wiel, *Water Rights in the Western States* § 35 (3d ed. 1911);  2 C. Kinney, *Irrigation and Water Rights and the Arid Region Doctrine of Appropriation of Waters* §§ 773, 774 (2d ed. 1912);  1 W. Hutchins, *Water Rights Laws in the Nineteen Western States* 144 (1971).

The appropriator's rights in the particular molecules of diverted water do not necessarily end when the water has been used once for irrigation.  *See Ide v. United States,* 263 U.S. 497, 506, 44 S.Ct. 182, 185, 68 L.Ed. 407 (1924).  An appropriator has a right to recapture and reuse this [waste, seepage or return flow] water, even under certain circumstances, when the water has left the appropriator's land and entered a natural watercourse.  *Ide; Jensen v. Department of Ecology,* 102 Wash.2d 109, 114-15, 685 P.2d 1068 (1984).

*Department of Ecology v. United States Bureau of Reclamation,*118 Wash.2d 761, 768, 827 P.2d 275, 279 (1992).[29]  In the *Department of Ecology* case, "[t]he irrigation districts cite[d] to a line of cases holding that an appropriator's rights in particular water molecules extend at least as long as the water remains within the boundaries of the appropriator's property."

We refer to this theory as the "geographical" test.  In *Miller v. Wheeler,* 54 Wash. 429, 434-35, 103 P. 641 (1909), the court stated that landowners who irrigate using appropriated water retain the right to [waste, seepage and

---

[29]In *Jensen v. Department of Ecology,* 102 Wash.2d 109, 114-15, 685 P.2d 1068 (1984), the court held that irrigation water artificially stored as groundwater together with a fully appropriated supply of natural groundwater did not lose its identity as water subject to the Bureau of Reclamation's project water rights where it could be identified by a measurable increase in volume.  Quoting *Ide*, the *Jensen* court observed: "'It is requisite, of course, that he be able to identify it; but, subject to that limitation, he may conduct it through natural channels and may even commingle it or suffer it to commingle with other waters. In short, the rights of an appropriator in these respects are not affected by the fact that the water has once been used.'" *Id.*, 685 P.2d at 1071-1072 (quoting *Ide*, 263 U.S. at 506).

return flow] water while it remains on their land.  This rule is also the law
in other jurisdictions.  One of the clearest statements of this rule is from
Nevada:

> *So long as [waste] water exists upon [the plaintiffs'] lands, it
> is their property,* and they may consent to others acquiring
> rights therein upon their property and in ditches thereupon for
> the purpose of conveying such waters to the lands of such
> other parties.
> These waters, while upon the lands of the plaintiffs Bidleman,
> were certainly not subject to appropriation by the
> defendants.... (Citation omitted.  Italics ours.)

*Bidleman v. Short,* 38 Nev. 467, 471, 150 P. 834 (1915).   Similar
pronouncements are found in cases from other Western States.   *See Barker
v. Sonner,* 135 Or. 75, 79, 294 P. 1053 (1931) (water is not even considered
waste water until it has left the land of the original appropriator); *Smithfield
West Bench Irr. Co. v. Union Cent. Life Ins. Co.,* 105 Utah 468, 472-73, 142
P.2d 866 (1943); *Jones v. Warmsprings Irr. Dist.,* 162 Or. 186, 198-99, 91
P.2d 542 (1939) (an irrigation district's water becomes free, unappropriated
water when it leaves lands within an irrigation district and returns to the
stream from which its was diverted, absent any attempt by landowners in
the district to control it).

Here, the water in Hanson's stream is still within the boundaries of
the irrigation project.   Therefore, under the irrigation districts' theory, the
water would still be appropriated to the project.

*Id.,* 827 P.2d at 279-280.  In contrast, the Department of Ecology had cited "a number of

authorities for the proposition that the duration of an appropriator's rights in particular

molecules of water depends on continued control and possession of the water."

One of the cases cited by the Department describes the test as follows:

> When possession of the actual water, or corpus, has been
> relinquished, or lost by discharge without intent to recapture,
> property in it ceases.   This is not the abandonment of a water
> right, but merely an abandonment of specific portions of

-40-

> water, i.e., the very particles which are discharged or have
> escaped from control.   (Italics omitted.)

> *Stevens v. Oakdale Irr. Dist.,* 13 Cal.2d 343, 350, 90 P.2d 58 (1939).   *See
> also Rock Creek Ditch & Flume Co. v. Miller,* 93 Mont. 248, 17 P.2d 1074
> (1933).   General statements of this standard seem to be fairly well accepted
> in the Western States.  *See* 1 S. Wiel, *Water Rights in the Western States* §
> 37 (3d ed. 1911).

*Id.* at 280.  As a matter of Washington state water law, the *Department of Ecology* court

propounded a synthesis of the two tests:

> It appears that both the Department's "control and possession" test
> and the irrigation districts' geographical test are well founded in the water
> law of the Western States.   We therefore strive to construe these lines of
> authority so as to give greatest possible effect to each.   We conclude that an
> appropriator's rights in particular molecules of water do not end while the
> water remains within the boundaries of the appropriator's property, and that
> after water has left those boundaries, the termination of the appropriator's
> rights depends on the "control and possession" test.   Accordingly, once an
> appropriator has discharged water from his or her own property, then the
> issue becomes whether the appropriator nevertheless retains an intent to
> recapture that water, whether downstream on another piece of property or
> otherwise.

*Id.*  The Washington court's synthesis may reflect the broadest current reading of an

appropriator's continuing right to return flows available in current Western water law.

*Cf.* 45 Am. Jur. 2d *Irrigation* § 33 (1999) ("Generally, escaped water is not subject to

recapture where nothing is done to reclaim it before it reaches a stream.").  Yet its

analysis is grounded entirely upon *state* law, without any suggestion that the Reclamation

Act, the specific federal project legislation, or the federal reclamation contracts confer

any greater reach upon appropriators of water delivered by federal projects—including

the Bureau of Reclamation itself— in recapturing waste, seepage or return flow of project waters.

Under the federal reclamation statutes, the specific legislation governing the Strawberry Valley and Central Utah projects, and the 1991 Contract currently governing the delivery of project water to SWUA (or the prior contracts between these parties), neither the United States nor SWUA are expressly granted legal ownership, control or authority over the return flow of Strawberry project water once that water flows beyond Strawberry and SWUA facilities and the lands served by the project, or can no longer be identified as Strawberry project water in natural streams or bodies of water such as Utah Lake.  Neither the United States nor SWUA has been granted "legal," "equitable" or "beneficial" ownership of the corpus of project waters, or has been invested with the legal prerogative to track every molecule of Strawberry project water to its ultimate evaporative or consumptive loss, in the process ignoring the rights and interests of downstream appropriators under the Utah laws governing "the control, appropriation, use or distribution of water" in the State of Utah.

Utah Code Ann. § 73-1-1 (1989) states that "[a]ll waters in this state, whether above or under the ground are hereby declared to be the property of the public, subject to all existing rights to the use thereof."

> Thus, individuals have no ownership interest as such in natural waters, only the right to put the water to certain uses.  "Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state," § 73-1-3, and the right to beneficial use may be acquired only by compliance

with the legal procedures for appropriation of a given right. *But appropriation does not confer an ownership interest in the water itself. Daniels Irrigation Co. v. Daniel Summit Co.*, Utah, 571 P.2d 1323 (1977); *Salt Lake City v. Salt Lake City Water & Elec. Power Co.*, 24 Utah 249, 67 P. 672 (1902).

*J.J.N.P. Co. v. State, By and Through Div. of Wildlife Resources*, 655 P.2d 1133, 1136 (Utah 1982) (emphasis added & footnote omitted).  In *Adams v. Portage Irrigation, Reservoir & Power Co.*, 95 Utah 1, 72 P.2d 648 (1937), the Utah Supreme Court observed:

> Waters in this state are of two classes, public waters and private waters. The latter class is not only subject to exclusive control and ownership, but may be used, sold, or wasted.  It consists of such waters *only as have been reduced to actual, physical possession of an individual by being taken into his vessels or storage receptacles*.  It is private property and may be the subject of larceny. Public waters, on the other hand, are not the subject of larceny. The title thereto is in the public; all are equal owners; that is, have coequal rights therein, and *one cannot obtain the exclusive control thereof*.   These waters are the gift of Providence; they belong to all as nature placed them or made them available. They are the waters flowing in natural channels or ponded in natural lakes and reservoirs.  *The title thereto is not subject to private acquisition and barter, even by the federal government* or the state itself . . . . no title to the corpus of the water itself has been or can be granted, while it is naturally flowing, any more than it can to the air or the winds or the sunshine. "Such water," says Blackstone, "is a movable, wandering thing," . . . like wild birds on the wing.

*Id.* at 11, 72 P.2d at 652-53 (emphasis added).  *See also Deseret Livestock v. Sharp*, 123 Utah 353, 259 P.2d 607 (1953).  Return flows of Strawberry project water have not been "taken into . . . vessels or storage receptacles" either by SWUA or the United States and thus remain public waters of the State of Utah "not subject to private acquisition or barter," and subject to further appropriation to beneficial use under governing Utah water

-43-

law, which "excludes every means of appropriation except by application to the State

Engineer." *J.J.N.P.*, 665 P.2d at 1137 (citing Utah Code Ann. § 73-3-10).[30]

The suggestion advanced by counsel at pretrial, *viz.*, that because public waters of

the State of Utah are impounded and then "imported" by diversion into one drainage

basin from another, they remain subject to appropriation and use under project water

rights and are no longer subject to further appropriation by other users from the natural

watercourses by  into which they flow, appears to run contrary to § 8 of the Reclamation

Act, which mandates that "[n]othing in this Act shall be construed as affecting or

intended to affect or to in any way interfere with the laws of any State . . . relating to the

control, appropriation, use, or distribution of water used in irrigation, or any vested right

acquired thereunder," and that the "Secretary of the Interior, in carrying out the provisions

of this Act, shall proceed in conformity with such laws . . . ."  43 U.S.C.A. § 383.

The Utah Supreme Court's conclusion that the question of the rights of the United

States or SWUA to control the appropriation, use, distribution or exchange of the return

flows of Strawberry project water beyond SWUA's initial use is governed by Utah law,

*see Uintah Basin Water Rights* at ¶ 50, appears to be entirely correct.  The Utah court's

observation that the parties' expansive claims of a plenary right to recapture return flow

"venture[] into uncharted territory"—territory nonetheless governed by "well-established

---

[30]In contrast to *Klamath Irrigation District v. United States*, 67 Fed.Cl. 504, 61 ERC 1385 (Ct. Fed. Cl. 2005), cited by the federal defendants, this is not a case where state law deems a quantity of water to have been appropriated by the United States by its designation for use in an irrigation project, regardless of the actual application of the water to beneficial use on project lands.

principles" of Utah water law pursuant to § 8 of the Reclamation Act, 43 U.S.C.A. §

383—likewise appears to be entirely correct, and "Utah courts will have to grapple with

these issues" raised by novel and expansive if not revolutionary claims in light of

precedent such as *Stubbs v. Ercanbrack*, 13 Utah 2d 45, 368 P.2d 461, 464 (1962), and

*Smithfield West Bench Irr. Co. v. Union Central Life Ins. Co.*, 105 Utah 468, 142 P.2d

866 (1943).  *Id.* at ¶¶ 48, 50, 52.


### The "Judicial Review Action": *Strawberry Water Users Association v. Robert L. Morgan, et al.*, Civil No. 2:02-CV-344BSJ (D. Utah).

In light of the *Uintah Basin Water Rights* opinion, its seems plainly apparent that

the respective rights of the United States, SWUA and SWUA's shareholders to make

applications to the Utah State Engineer for change of purpose, use, or place of diversion

of water from the enlarged Strawberry Reservoir, or the exchange of those water rights

for others, are matters of federal reclamation law and federal contract to be decided by

this court.  The merits of these questions cannot be decided by the State Engineer in the

context of proceedings on change applications or in a *de novo* judicial review proceeding

arising from the State Engineer's determination of those applications.

At the July 14, 2003 hearing on SWUA's motion to dismiss the "judicial review

action" without prejudice, SWUA's counsel indicated that issues pertaining to SWUA's

change applications had become moot, and that the sole issue remaining for decision in

that action was the question of the right of the United States to make change applications

as to Strawberry project water and whether the State Engineer had erred in granting the United States' change application in his August 24, 2001 Memorandum Decision.  (*See* Transcript of Hearing, dated July 14, 2003, at 15:10-25 (Mr. Draney).)  Counsel argued that the judicial review action should be dismissed without prejudice in favor of resolution of the question of rights either in a general adjudication in state district court or as a matter of federal contract claims in this court.  (*Id.* at 32:19-40:7 (Mr. Draney).)

Given the Utah Supreme Court's allocation of jurisdiction in the *Uintah Basin Water Rights* opinion, and this court's rulings construing federal law and federal contract in the context of the final pretrial conference, the sole remaining question raised by SWUA in the "judicial review action" appears "academic," as this court indicated at pretrial.  Because the question of the authority of the United States to file change applications in its own name as to Strawberry project water rights held in its own name was and is beyond the purview of the State Engineer in the context of the change application proceedings, the original motions to dismiss filed by the defendants in Case No. 2:02-CV-344 appear to have been well taken and should be granted.  The "judicial review action" is dismissed.

**SUMMARY**

For the reasons explained in some detail above, this court concludes that the plaintiff Strawberry Water Users Association is entitled to declaratory relief establishing that the provisions of the 1991 Contract assuring the annual delivery of 61,000 acre-feet

of water from the enlarged Strawberry Reservoir at a rate of flow specified by SWUA up to 600 cubic feet per second, with priority over the Bonneville Unit of the Central Utah Project, are valid and enforceable as written.

The United States remains the legal owner and appropriator of record of rights to water delivered from the enlarged Strawberry Reservoir as reflected in certificates of appropriation issued in its own name.  Under federal reclamation law and federal contracts, including the 1991 Contract, the United States retains the authority to file applications for change of purpose or place of diversion or use of Strawberry project waters and to approve change applications filed by SWUA (or its shareholders) pertaining to water rights to Strawberry project water held in the name of the United States, provided that the United States cannot act in derogation of the rights and entitlements of the ultimate users of Strawberry project water in whose interest it is obliged to act, consistent with the purposes of the federal project, the federal statutes and the 1991 Contract.

The question of the scope and extent of the rights of the United States and SWUA to recapture and control return flows of Strawberry project water is governed by Utah law, not by federal reclamation law or federal contract, and would best be determined by a Utah state court in the context of a general water rights adjudication, as indicated by the Utah Supreme Court in the *Uintah Basin Water Rights* opinion.

SWUA's claims concerning power development under Article 19 of the 1991 Contract appear to raise triable issues, and this court has concluded that those claims

should be further considered pursuant to Fed. R. Civ. P. 16(c)(1) in the context of a

continuing final pretrial conference and counsel's submission of a proposed pretrial order,

pretrial briefs and supplements.  (*See* Minute Entry, dated April 29, 2005 (dkt. no. 338);

Minute Entry, dated May 13, 2005 (dkt. no. 341); Order, filed June 6, 2005 (dkt. no. 352);

[Proposed] Pretrial Order, received April 27, 2005.)

DATED this _3_ day of March, 2006.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

-48-